1

2

3

4

5

6

7

8

9

10

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOHAMED ABDALLA, an individual; FUAD
ABDELLA, an individual; ABDIKHADAR
ABDI, an individual; ABDISADIQ ABDI, an
individual; ABDULLAHI ABDI, an individual;
HABTAMU ABDI, an individual; MOHAMUD
ABDIFATAH, an individual; MOHAMED
ABDILLAHI, an individual; MOHAMED
ABDUL, an individual; BIFTU ABDULLAHI,
an individual; FAIZA ABDULLAHI, an
individual; MILKI ABDULLAHI, an
individual; MUMIN ABDULLAHI, an
individual; YONAS ABERA, an individual;
MUSTAFA ABUCAR, an individual; FEYSAL
ADAN, an individual; HASSAN ADAN, an
individual; NAJIB ADEN, an individual;
MUSTAFA AHMED, an individual; SALAH
AHMED, an individual; AHMED ALI, an
individual; ALI-NUUR ALI, an individual;
IBRAHIM ALI, an individual; MAHAD ALI,
an individual; MOHAMOUD ALI, an
individual; HASSAN ALLALEH, an individual;
ALI AL-MOHANAWY, an individual; ALI
AMIR, an individual; HAWA ARERO, an
individual; YOHANIS BESHI, an individual;
ABDIRAHMAN DAHIR, an individual;
AHMED DAHIR, an individual; ABDIKADIR
DERE, an individual; ABDULLAH DHOBLE,
an individual; ABUBAKAR DHUBOW, an
individual; ABDINASIR ELMI, an individual;
MOHAMED FARAH, an individual;

No.

**NOTICE OF REMOVAL**
**(Diversity Jurisdiction)**

**[CLERK'S ACTION REQUIRED]**

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 1

ABDIFATAH GALGALO, an individual;
AHMED GAMADA, an individual; KADIR
GANAMO, an individual; SERWAN GARDI,
an individual; MERRY GELETA, an
individual; JERAB GRIMES, an individual;
ALI HAJI-SOMO, an individual; ALI
HASSAN, an individual; HUSSEIN HASSAN,
an individual; ALI HASSAN ALI, an
individual; TUUJII HEYII, an individual;
ABDIFATAH HUSSEIN, an individual;
MOHAMED HUSSEIN, an individual; RIYAD
HUSSEIN, an individual; AHMED IBRAHIM,
an individual; LIBAN IBRAHIM, an individual;
ABDI IDAN, an individual; ABDULKADIR
ISAHAQ, an individual; AHMED ISAHAQ, an
individual; YAHYE JAMA, an individual;
MOHAMED JIBRIL, an individual; CHALA
KABIRA, an individual; NUREDIEN KAMAL,
an individual; GOULED KARIYE, an
individual; MOHAMED MAHAMOUD, an
individual; MOHAMED MANSOUR, an
individual; ZACKY MANSOUR, an individual;
ABDIFATAH MOALIM, an individual; ABDI
A. MOHAMED, an individual; ABDIKARIN
MOHAMED, an individual; ISMAIL
MOHAMED, an individual; JABIR
MOHAMED, an individual; KAREEM
MOHAMED, an individual; MOHAMED
MOHAMED, an individual; MOHAMED
YUSUF MOHAMED, an individual; MOWLID
MOHAMED, an individual; NAJEEB
MOHAMED, an individual; OLOW
MOHAMED, an individual; YAHYE
MOHAMED, an individual; YAHYA
MOHAMOUD, an individual; MOHAMED R.
MOHAMUD, an individual; SHAWN MOSBY,
an individual; MAHAMED OSMAN, an
individual; MOHAMED OSMAN, an
individual; YASIR RASHID, an individual;
AMIN ROBELE, an individual; JABIR
ROBELE, an individual; GOBANA SAMERU,
an individual; ISSA SHEIK, an individual;
AHMED SHEIKH, an individual; SIAD SIAD,
an individual; DEHIYA SITERO, an individual;
ABDI SUGULLE, an individual; AWOT
TWEOLDEBRHAN, an individual; DANIEL
TUNE, an individual; ADOGA UGAN, an

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 2

individual; GAMACHU UKE, an individual;
ZAKARIA WARSAME, an individual;
AHMED WASUGE, an individual;
JONATHAN WEREDE, an individual;
MOHAMED YACOUBE, an individual; and
HARON YUNIS, an individual;

                    Plaintiffs,

     v.

SECURITY INDUSTRY SPECIALISTS, INC.,
a California corporation; JAMES
CALABRESE, an individual,

                    Defendants.

TO:         The Judges of the U.S. District Court for the Western District of Washington

AND TO:   Stephen P. Connor, Anne-Marie E. Sargent, Connor & Sargent PLLC, and J.D. Stahl, Mundt MacGregor LLP, Counsel for Plaintiffs

AND TO:   Clerk of the Court

Pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441, Defendant Security Industry Specialists, Inc. ("SIS") hereby removes the above-captioned action from the Superior Court of the State of Washington for King County on the ground of diversity jurisdiction, with the consent and joinder of Defendant James Calabrese ("Calabrese"). 28 U.S.C. § 1332(a), § 1441(a), (b).

The following statement is submitted pursuant to 28 U.S.C. § 1446(a):

1.       The Plaintiffs are citizens of the State of Washington. Complaint ¶¶ 2.1-2.99.[1]

2.       Defendant SIS is a California corporation, with its principal place of business and its headquarters in California. Complaint ¶ 2.100.[2] Accordingly, SIS is a citizen of California. 28 U.S.C. § 1332(c)(1).

3.       Calabrese is a citizen of the State of Washington. Complaint ¶ 2.101.[3] However, for the reasons discussed below, Calabrese is a sham defendant whose citizenship should be disregarded in determined whether diversity jurisdiction exists.

---

[1]   A copy of the Complaint that was served on SIS is provided as Exhibit 1 to this Notice of Removal.
[2]   *See also,* Washington Secretary of State listing at http://www.sos.wa.gov/corps/search_results.aspx?search_type=simple&criteria=all&name_type=contains&name=security+industry+specialists&ubi=.
[3]   *See also* Declaration of James Calabrese Dated September 13, 2013 ("Calabrese Decl.") ¶ 3.

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 3

1    4.    On May 29, 2013, Plaintiffs commenced an action against SIS in King County
2    Superior Court on behalf of 99 named individual plaintiffs, which the state court designated as
3    Case Number 13-2-22490-1 ("Plaintiffs' First Complaint").[4]   Plaintiffs' First Complaint named
4    SIS as the only defendant.

5    5.    On June 28, 2013, SIS removed the Plaintiffs' First Complaint to this federal
6    court on the basis of diversity jurisdiction.  After this removal, the Court designated the action
7    initiated through Plaintiffs' First Complaint as Case Number 2:13-cv-01118, which this Court
8    assigned to Judge James L. Robart.  On July 22, 2013 this Court issued its Order Regarding
9    Initial Disclosures and Joint Status Report.  *See* Case Number 2:13-cv-01118-JLR, ECF No. 9.

10   6.    The very next day, July 23, 2013, Plaintiffs filed with this Court a Notice of
11   Voluntary Dismissal Without Prejudice Pursuant to FRCP 41(a)(1)(A)(i).  *See* Case Number
12   2:13-cv-01118-JLR, ECF No. 11.  On July 24, 2013, the Court added a docket entry noting the
13   termination of the federal action stemming from the removal of Plaintiffs' First Complaint.
14   *See* Case Number 2:13-cv-01118-JLR (last docket entry).

15   7.    On July 29, 2013, Stephen Connor, one of Plaintiffs' counsel, and Karen Kruse,
16   one of the undersigned counsel for SIS, discussed the status of Plaintiffs' dispute with SIS.
17   During this telephone call, Mr. Connor advised that Plaintiffs would be filing a new Complaint
18   naming a non-diverse individual defendant, James Calabrese.  Declaration of Karen P. Kruse
19   Dated September 16, 2013 ("Kruse Decl.") ¶¶ 2-3.

20   8.    On August 6, 2013, at 5:45 p.m., staff for Plaintiffs' counsel sent informal email
21   correspondence to counsel for SIS attaching, among other things, a new Complaint styled for
22   filing in King County Superior Court that is substantially similar to Plaintiffs' First Complaint,
23   but that also names Defendant Calabrese as a defendant in this second action.[5]   The new

---

[4]   Plaintiffs' First Complaint is available in this Court's records at ECF No. 1 in Case Number 2:13-cv-01118-JLR (Exhibit 1 to the Notice of Removal in that action).  For the Court's convenience and ease of reference, another copy of Plaintiff's First Complaint is attached as Exhibit 2 hereto.
[5]   Plaintiffs' Second Complaint contains a further difference from Plaintiffs' First Complaint that is relevant to removal analysis:  unlike Plaintiffs' First Complaint, Plaintiffs' Second Complaint does not contain each Plaintiff's individual waiver of damages exceeding $75,000.  *Compare* Plaintiffs' First Complaint (Exhibit 2)  ¶ 3.4

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 4

1  Complaint informally forwarded did not include any indication that it had been filed with the

2  King County Superior Court.  Exhibit 3 to this Notice of Removal is an excerpt from this

3  August 6, 2013 email correspondence from staff for Plaintiffs' counsel that consists of (a) the

4  cover email forwarding several materials, and (b) an undated letter from Plaintiffs' counsel to

5  counsel for SIS stating that Plaintiffs would be formally serving SIS's registered agent and

6  Defendant Calabrese.  The new complaint enclosed with the August 6, 2013 correspondence

7  from Plaintiffs' counsel is the same as the copy that was later served on SIS and is referred to

8  herein as "Plaintiffs' Second Complaint."  Plaintiffs' Second Complaint is the operative pleading

9  in this action and is provided as Exhibit 1 to this Notice of Removal.

10        9.      On information and belief, on August 6, 2013, Plaintiffs' Second Complaint was

11  filed in King County Superior Court, together with two Summonses (one for SIS and one for

12  Calabrese), and it was designated by the state court as Case Number 13-2-28490-1.  On that

13  same day, the state court issued its Order Setting Civil Case Schedule for Plaintiffs' Second

14  Complaint, a copy of which was later served on SIS.

15        10.     On August 15, 2013, Plaintiffs formally served SIS with their Summons directed

16  to SIS as well as with Plaintiffs' Second Complaint, the state court's Case Information Cover

17  Sheet and Area Designation, the state court's Order Setting Civil Case Schedule, and Plaintiffs'

18  First Set of Discovery Requests to Defendant SIS.  A copy of Plaintiffs' Second Complaint as

19  served on SIS is provided in Exhibit 1.   The remaining documents served on SIS on

20  August 15, 2013 are provided in Exhibit 4 to this Notice of Removal together with the

21  transmittal sheet that was emailed to SIS from its registered agent.

22        11.     On August 22, 2013, Plaintiffs filed a Declaration of Service in the state court

23  relating to the service on SIS of Plaintiffs' Second Complaint.  On September 3, 2013, attorneys

24  for SIS filed a Notice of Appearance in this second state court action.    Also on

25  September 3, 2013, Plaintiffs filed a Declaration of Service in the state court relating to the

26  service on Calabrese of Plaintiffs' Second Complaint.  On September 13, 2013, attorneys for

27  _____

(the paragraph waiving such damages) *with* Plaintiffs' Second Complaint (Exhibit 1) at p. 12 (no corresponding
paragraph).

28

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 5

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

Calabrese filed a Notice of Appearance in the second state court action.  True and correct copies of all of these documents are provided in Exhibit 5 to this Notice of Removal.

12.     Pursuant to 28 U.S.C § 1446(a), Exhibits 1 and 4 in combination contain all process, pleadings and orders served in this action upon SIS.

13.     When Calabrese was served, he received a copy of Plaintiffs' Second Complaint along with the Summons addressed to him, the state court's Case Information Cover Sheet and Area Designation, the state court's Order Setting Civil Case Schedule, and Plaintiffs' First Set of Discovery Requests to Defendant SIS.  *See* Calabrese Decl. ¶ 2 & Ex. A.  Pursuant to 28 U.S.C § 1446(a), Exhibit A to the accompanying Calabrese Declaration contains all process, pleadings and orders served in this action upon Calabrese.

14.     Pursuant to 28 U.S.C. § 1446(b)(2)(A), Calabrese has provided his consent to SIS removing this action and joins in this removal.  Calabrese Decl. ¶ 2.

15.     No further proceedings have been had in the second state court action as of the date of this Notice of Removal.

16.     This Notice of Removal is being timely filed within 30 days of August 15, 2013, which is the date SIS was formally served with the initial pleading upon which this removal is based.  *See* 29 U.S.C. § 1446(b); *Murphy Bros v. Machetti Pipe Stringing, Inc.,* 526 U.S. 344, 354 (1999) ("[I]f the complaint is filed in court prior to any service, the removal period runs from the service of the summons."); Fed. R. Civ. P. 6(a)(1)(C) (if the last day of a specified time period is a Saturday, Sunday, or legal holiday, time period is extended to the next Monday); *Placencia v. World Savings Bank FSB,* 2011 U.S. Dist. LEXIS 44846 at *14 (applying Rule 6 where the 30-day period for removal fell on a Saturday).

17.     For the reasons explained in the sections that follow, this Court has diversity jurisdiction over this action.  More specifically, there is complete diversity of citizenship once one disregards the citizenship of Plaintiffs' sham defendant, Calabrese, and the amount in controversy substantially exceeds $75,000 for all of the Plaintiffs.  Further, to the extent (if any) one or more individual Plaintiffs contends these diversity elements are lacking in his or her

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 6

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

individual situation, this Court would have supplemental jurisdiction over the claims of that Plaintiff or Plaintiffs.

## COMPLETE DIVERSITY OF THE PARTIES EXISTS.

**Defendant Calabrese Is a "Sham" Defendant Whose Citizenship Must Be Ignored Because He Cannot Be Held Liable for Any of the Claims Asserted by Plaintiffs.**

18.     Plaintiffs have engaged in transparent tactical maneuvering to evade federal jurisdiction.   After this Court accepted diversity removal jurisdiction of Plaintiffs' First Complaint despite Plaintiffs' obvious effort to structure that complaint so as to avoid exceeding this Court's jurisdictional threshold of $75,000, Plaintiffs voluntarily dismissed their first action. Two weeks later, they filed (but did not serve) Plaintiffs' Second Complaint, which eliminated Plaintiffs' prior individual waivers of damages exceeding $75,000, but which added James Calabrese, a Washington resident, in a clear attempt to destroy complete diversity of citizenship. *Compare* Plaintiff's First Complaint (Exhibit 2 hereto) at Caption and ¶ 3.4 *with* Plaintiffs' Second Complaint (Exhibit 1 hereto) at Caption and p. 12.

19.     As stated above in paragraphs 1-2 of this Notice of Removal, all of the Plaintiffs here are citizens of the State of Washington, whereas Defendant SIS, which originally was the only defendant, is a citizen of the State of California.   Thus, complete diversity of the parties would continue to exist, consistent with 28 U.S.C. § 1332(a), if only Plaintiffs and Defendant SIS were named.

20.     Although Plaintiffs now have named Defendant Calabrese, who is a citizen of Washington, their obvious purpose in naming Calabrese as an individual defendant was to prevent this Court from exercising diversity jurisdiction under 28 U.S.C. § 1332(a).   Mr. Connor, one of Plaintiffs' counsel, conveyed as much during a July 29, 2013 conversation with Ms. Kruse, one of the undersigned defense counsel.   *See* Kruse Decl. ¶¶ 2-3.   Moreover, Plaintiffs' objective in naming Calabrese is readily apparent from their recent tactical maneuvering, particularly the omission, in Plaintiffs' Second Complaint, of their previous waiver of damages exceeding a self-imposed cap of $75,000, which was Plaintiffs' original effort to avoid the diversity jurisdiction.   *See* Plaintiffs' First Complaint (Exhibit 2) ¶ 3.4 ("Each Plaintiff

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 7

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1  agrees to waive damages above $75,000, exclusive of attorneys' fees and costs; therefore,

2  diversity jurisdiction for purposes of removal to federal court is not met.").

3      21.  Joinder of a non-diverse defendant does not preclude diversity jurisdiction when

4  the plaintiff cannot prove a cause of action against that defendant.  Under the "sham defendant"

5  or "fraudulent joiner" doctrine, a non-diverse defendant constitutes a "sham" or a "fraudulently

6  joined" defendant if either (1) no viable cause of action has been stated again the non-diverse

7  defendant, or (2) evidence presented by the removing party shows there is no factual basis for the

8  claims alleged against the non-diverse defendant.  *See, e.g., Morris v. Princess Cruises, Inc.,*

9  236 F.3d 1061, 1067 (9th Cir. 2001) (When a non-diverse defendant's joinder "is deemed

10  fraudulent," "the defendant's presence in the lawsuit is ignored for purposes of determining

11  diversity . . ."); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

12      22.  Under Ninth Circuit authority, defendants are "entitled to present the facts

13  showing the joinder to be fraudulent."  *McCabe*, 811 F.2d at 1339 (holding that resident

14  managers joined as defendants in wrongful discharge claim against former employer were joined

15  to defeat diversity jurisdiction and that diversity existed after their citizenship was disregarded).

16      23.  Plaintiffs' Second Complaint alleges racial, national origin and religious

17  discrimination in the practices used for hiring new SIS employees to perform security services

18  under a contract between SIS and Amazon, Inc. in and around the South Lake Union area of

19  Seattle. *See, e.g.,* Plaintiffs' Second Complaint (Exhibit 1) ¶¶ 1, 5.1, 5.4-5.10.  Plaintiffs assert

20  three causes of action:  (1) alleged intentional discrimination through "failure to hire any of the

21  Plaintiffs because of their race, national origin or religion," *id.* ¶ 6.2; (2) alleged retaliatory

22  "failure to hire any of the Plaintiffs because they actually asserted, or were perceived by

23  Defendants to have asserted, their legal rights to oppose unlawful discrimination treatment by

24  their previous employer," Amazon's predecessor security contractor, *id.* ¶ 6.4; *see also,*

25  *id.* ¶¶ 5.1-5.3, 5.15, 5.17-5.18; and (3) an alleged "disparate impact" of "Defendants' hiring

26  process" on persons of color, of African origin, and/or of the Muslim faith, *id.* ¶ 6.6.

27

28

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 8

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

24.     Plaintiffs' Second Complaint makes a conclusory allegation that Defendants SIS and Calabrese engaged in "the same series of illegal hiring practices."  Plaintiffs' Second Complaint (Exhibit 1) ¶ 1.1.  Plaintiffs contend that both of these Defendants are thus liable under the Washington Law Against Discrimination ("WLAD") prohibitions of discrimination and retaliation. *Id.* ¶¶ 1.2, 6.1-6.7.

25.     Calabrese became employed by SIS on July 28, 2012 as a Security Supervisor as part of the initial workforce SIS hired to staff its contract with Amazon for security services. Calabrese Decl. ¶¶ 4, 12.

26.     The WLAD permits a plaintiff to hold a supervisor individually liable only when the supervisor personally participates in the alleged WLAD violation.  *Brown v. Scott Paper Worldwide Co.,* 143 Wn.2d 349, 353, 20 P.3d 921 (2001) ("we hold supervisors, along with their employers, can be held liable for their discriminatory acts").

27.     Calabrese did not participate in SIS's hiring of its initial workforce for its Amazon contract.  Calabrese Decl. ¶ 12 ("I did not take part in SIS's hiring process for any other members of that initial workforce.  I was not asked to give, nor did I provide, any input on any job applicants before SIS began performing security services for Amazon.").  However, at least 71 of the 99 Plaintiffs applied to SIS for Security Specialist positions when SIS began hiring for this position.  Declaration of Kayt Priester Dated September 13, 2013 ("Priester Decl.") ¶ 4.  In addition, at least four individual Plaintiffs applied for above entry-level positions in July 2012 before Calabrese became employed by SIS.  *Id.* ¶¶ 10-11.  Calabrese plainly was not involved in any of the hiring decisions SIS made with respect to any of these applications. Calabrese Decl. ¶ 12.

28.     For different reasons, ten of the 99 individual Plaintiffs do not have any factual basis for contending Calabrese is liable to them for SIS's failure to hire them.  Two of these ten Plaintiffs admit they "were informed they were hired," so they have no factual basis for asserting they were damaged by any alleged participation by Calabrese in their hiring process.  *See* Plaintiffs' Second Complaint ¶¶ 5.10 (Mohammed Hussein and Mohamed Olow); *cf. Brown,*

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1    143 Wn.2d at 360 n.3 ("Supervisors are liable when they *affirmatively* engage in discriminatory

2    conduct." (Italics in original.)).[6]   Similarly, Plaintiff Yashir Rashid was ultimately hired by SIS.

3    Priester Decl. ¶ 17.   The other seven of these ten Plaintiffs admit they did not even apply to SIS.

4    Plaintiffs' Second Complaint ¶ 5.10 (Plaintiffs Milki Abdullahi, Serwan Gardi, Merry Geleta,

5    Riyad Hussein, Mohamed Yusuf, Yahye Mohamed and Daniel Tune).   These non-applicant

6    Plaintiffs allege they did not apply due to the short time frame for using the SIS web application

7    link which their then-employer, Andrews International, Inc., ("Andrews"), gave when, on

8    July 16, 2012, it announced to the Andrews workforce that Andrews was would no longer be

9    performing the Amazon security work at issue.   These non-applicant Plaintiffs also cite alleged

10   technical difficulties with the SIS application website and asserted (an erroneous) belief that the

11   SIS link was the only way to apply.   *See* Plaintiffs' Second Complaint ¶¶ 5.7-5.8; *cf.* Calabrese

12   Decl. ¶ 9 (Calabrese identified SIS opportunities on Craigslist and applied through the SIS

13   corporate website).   In addition, the seven non-applicant Plaintiffs allegedly relied on their

14   hearsay understanding that "the Plaintiffs who had applied to SIS via the link or otherwise were

15   not being hired by SIS."   *Id.*   Even if these hearsay allegations sufficiently state a claim against

16   SIS (which Defendants highly doubt, but leave for another day), there is not the slightest hint that

17   Calabrese engaged in any affirmative conduct that had any bearing on any of these alleged

18   circumstances that purportedly discouraged seven Plaintiffs from applying.

19        29.     Some of the Plaintiffs may be claiming they suffered discriminatory failures to

20   hire after SIS completed its initial staffing for its Amazon contract.   *See* Priester Decl. ¶¶ 6-9,

21   12-14 (identifying nine Plaintiff applications SIS received in the months after July 2012).   Even

22   if such allegations are made, there is no basis for contending Calabrese is liable to any of these

23   Plaintiffs.   Calabrese's only role in the hiring process began in November 2012—more than four

24   months after SIS became Amazon's security provider.   His role was limited to providing one-off

---

[6]   Plaintiff Mohamed Hussein goes on to contend that he believed his hiring had been revoked after "representatives from SIS spoke with him over the phone about prayer . . ."   Plaintiffs' Second Complaint (Exhibit 1) ¶ 5.11. However, Plaintiff Hussein makes no allegation that Calabrese was one of those representatives or that Calabrese engaged in any other affirmative conduct relating to his alleged belief that his hiring had been revoked.

Plaintiff Olow's further allegations against Calabrese are discussed below in paragraph 30.f.

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 10

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

comments about particular applicants when his input was solicited by SIS's Recruiting Manager. *See* Calabrese Decl. ¶¶ 11-15 & Exhibit B. This was well after most of SIS's hiring decisions for its Amazon contract already had been made.  Moreover, Calabrese's comments about former Andrews employees were mostly positive. *Id.*, Exhibit B.

30.   Plaintiffs' Second Complaint provides very few specifics concerning their supposed factual bases for asserting that Calabrese may be held personally liable to some or all of them on their individual claims. Moreover, Plaintiffs admittedly make some of those averments only on "information and belief," as opposed to on the basis of personal knowledge. The only *specific* allegations in Plaintiffs' Second Complaint about Calabrese's potential personal liability are addressed in the subparagraphs that follow:

a.    Plaintiffs allege that, while they were still employed with Andrews International (the security services provider before SIS), they allegedly complained to their Andrews supervisors as well as to Andrews Human Resources, headquarters, and its local account managers that "they suffered disparate treatment and a hostile work environment on the basis of their race, national origin and/or religion."  Plaintiffs' Second Complaint ¶ 5.3.  Further, Plaintiffs allege that about 30 of their group "retained attorneys in the spring of 2012 and threatened to file suit regarding these claims." *Id.* Plaintiffs contend "Defendant Calabrese was an account manager at Andrews and was aware of the complaints." *Id.*  However, Plaintiffs' unsworn allegations are mistaken: Calabrese has provided testimony under oath that he obtained secondhand information about a threatened lawsuit, but he had no knowledge of its substance, whether it was ever filed, or whether it "involved East Africans as alleged in Paragraph 5.3 of the Complaint in this action."  Calabrese Decl. ¶ 8.

b.    Plaintiffs assert, only "[u]pon information and belief," that "SIS hired Calabrese for a supervisory position in advance of the July 16 [, 2012] announcement by Andrews "that Defendant SIS would be the new security firm providing security services to Amazon" at the locations in question.  Plaintiffs' Second Complaint ¶¶ 5.4-5.5.

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 11

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1   Calabrese's sworn testimony again shows that Plaintiffs' information, again, is incorrect.

2   *See* Calabrese Decl. ¶¶ 4, 9-13 (Calabrese became employed by SIS on July 28, 2012,

3   and "continued to work for Andrews until SIS began providing security services to

4   Amazon." His first workday for SIS was July 30, 2012).

5         c.    Plaintiffs allege "Calabrese encouraged non-Muslim and/or African

6   employees at Andrews to apply at SIS, while purposefully keeping . . . [Calabrese's

7   alleged advance] information [about SIS's impending entry into a security services

8   contract with Amazon] from the Muslim and/or African employees." *Id* ¶ 5.5.

9   Calabrese's sworn testimony shows he did not have advance information about SIS's

10  impending Amazon contract when he applied to SIS, Calabrese Decl. ¶¶ 9, 21, and that

11  after Calabrese learned about SIS's impending Amazon contract during his interview

12  process with SIS, he did not share this information with any Andrews employees.

13  *Id.* ¶ 21.

14        d.    Plaintiffs speculate "[o]n information and belief" that "Calabrese holds

15  discriminatory attitudes towards Muslims and persons of African heritage." Calabrese

16  has denied this allegation under oath, Calabrese Decl. ¶ 21, and this allegation of

17  discriminatory "attitudes" is not, by itself, the type of "affirmative conduct" that would

18  be sufficient under *Brown* to hold Calabrese personally liable. *See* 143 Wn.2d at 360 n.3

19  ("Supervisors are liable when they *affirmatively* engage in discriminatory conduct."

20  (Italics in original)).

21        e.    Plaintiffs allege "[u]pon information and belief" that "SIS put Calabrese in

22  a position of authority and influence over which other former Andrews employees would

23  be re-hired. This, in part, [allegedly] caused SIS not to hire Plaintiffs because of their

24  race, national origin, or Muslim religion, or because of their complaints or perceived

25  complaints about and opposition to discrimination and hostile treatment by their former

26  employer." Plaintiffs' Second Complaint ¶ 5.15.

27

28

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 12

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

f.      One of Plaintiffs—Mohammed Olow—asserts he "worked at SIS for four days without incident, and was then terminated without explanation by Calabrese as soon as Calabrese discovered he [Olow] was working for SIS." *Id.* ¶ 5.12.  However, none of the Plaintiffs, including Plaintiff Olow, has asserted a claim of discriminatory termination.[7]

Plaintiffs' allegations against Calabrese fail to state viable causes of action against him personally and lack the required factual basis.

31.     In short, all or virtually all of the Plaintiffs' allegations against Calabrese fail to state viable causes of action against him personally.  Because Calabrese is a "sham" defendant, his citizenship must be ignored and this Court has jurisdiction under 28 U.S.C. § 1332.

## THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 FOR ALL OR VIRTUALLY ALL, OF THE 99 INDIVIDUAL PLAINTIFFS.

32.     Plaintiffs framed the allegations of their May 29, 2013 Complaint to deny diversity jurisdiction.  *See* Plaintiffs' First Complaint (Exhibit 2) ¶¶ 2.1-2.99, 3.4.  Most relevantly, Plaintiffs originally averred:

> Each Plaintiff agrees to waive damages above $75,000, **exclusive of attorneys' fees and costs**; therefore, diversity jurisdiction for purposes of removal to federal court is not met.

*Id.* ¶ 3.4 (emphasis added).  Because each of the individual Plaintiffs thus voluntarily waived and capped his or her damages at no more than $75,000, yet excluded any potential statutory attorney's fees and costs under RCW 49.60.030(2) from the waiver, SIS filed a Notice of

---

[7]   SIS offers evidence with this Notice of Removal that it decided to terminate its employment relationship with Plaintiff Olow shortly after it hired him because it learned that Olow was previously terminated from working for Andrews at the Amazon sites.  Specifically, Olow had been terminated by Andrews and barred from Amazon property due to a complaint from Amazon about Olow's conduct while working a security shift at Amazon's facilities. Calabrese Decl. ¶¶ 16, 18 & Exhibit C. Calabrese was present as a witness at Olow's termination meeting with SIS, and at Olow's prior termination meeting with Andrews.  *Id.* ¶¶ 16-18.  However, Calabrese did not recommend either termination decision regarding Olow.  *Id.* ¶¶ 16-20 & Exhibit C.  Moreover, even if Plaintiff Olow could somehow make a colorable claim that Calabrese is liable to him on a discriminatory termination theory, Plaintiff Olow (like the other two Plaintiffs who were hired by SIS) has agreed to arbitrate such claims.  *See* Priester Decl. ¶ 17.  Thus, Defendants plan to move to compel Plaintiff Olow and the other two Plaintiffs (Mohamed Hussein and Yasir Rashid) who were hired by SIS and signed the same Arbitration Agreement to arbitrate their claims and for the Court to dismiss these three Plaintiffs' claims in favor of an arbitration forum.  *See* Priester Decl. ¶ 17.

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 13

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1    Removal on June 28, 2013.  However, because Plaintiffs' First Complaint did not state any

2    specific total amount in controversy for any of the individual Plaintiffs, SIS was required to

3    engage in an extensive analysis to determine that the claims of at least one Plaintiff (actually,

4    multiple Plaintiffs) exceeded the $75,000 amount-in-controversy threshold when one includes

5    the value of Plaintiffs' potential attorney's fees and costs, as well as their requests for

6    unspecified "declaratory relief," "[r]einstatement," and "[c]ompensation for the tax penalty

7    associated with any recovery."  *See* Plaintiffs' First Complaint (Exhibit 2) at 19. Each of these

8    additional categories of relief increased the Plaintiffs' individual amounts in controversy.  *Cf.*

9    *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (The amount in

10   controversy there exceeded $75,000 even though the plaintiffs had disclaimed damages above

11   $75,000, because their complaint also sought attorney's fees and other categories of recovery

12   that "do not fall comfortably within the realm of 'damages' and [were] not labeled as such in the

13   Prayer for Relief.").

14       33.   When Plaintiffs filed their second complaint on August 6, 2013, they named

15   Calabrese as an individual defendant and deleted their previous $75,000 damages cap.  Adding

16   Calabrese is a transparent attempt to defeat complete diversity of citizenship.  Moreover, it

17   appears Plaintiffs deleted their individual waivers of damages exceeding $75,000 because they

18   erroneously believe these waivers are no longer needed, given Plaintiffs' addition of Calabrese, a

19   non-diverse defendant.

20       34.   As discussed in more detail below, Defendant Calabrese's citizenship must be

21   ignored for the purposes of diversity jurisdiction because he is a "sham" defendant against whom

22   all or most of the Plaintiffs have no cognizable cause of action based on the allegations of

23   Plaintiffs' Second Complaint and on the evidence Defendants are presenting with this Notice of

24   Removal.

25       35.   The claims in Plaintiffs' Second Complaint continue to meet the $75,000

26   amount-in-controversy jurisdictional threshold even though Plaintiffs' Second Complaint still

27   does not state any specific total amount in controversy for any of the individual Plaintiffs.

28

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 14

Plaintiffs' Prayer for Relief identifies eight categories of relief sought by each individual Plaintiff, including: damages for the alleged employment discrimination, prejudgment interest on all awards, statutory costs and fees, attorney's fees and costs pursuant to RCW 49.60.030(2), unspecified "declaratory relief," "[r]einstatement," "[c]ompensation for the tax penalty associated with any recovery," and "further and additional relief the court shall deem just and equitable." *See* Plaintiffs' Second Complaint (Exhibit 1), at 18-19 (Prayer for Relief, ¶¶ A-H). Each of these categories of relief adds to the Plaintiffs' individual amounts in controversy.

36. Based on the facts outlined in this Notice of Removal, SIS has a reasonable good faith belief that at least one of the individual Plaintiffs (and likely all or virtually all of the others) seeks individual relief exclusive of interests and costs that exceeds this Court's jurisdictional threshold of $75,000. Thus, this Court has jurisdiction over all of the claims asserted in this action by all of the individual Plaintiffs. *See Exxon Mobil Corp. v. Allapattah Svcs., Inc.*, 545 U.S. 546, 549 (2005). The sections that follow provide more specific facts confirming this Court's diversity jurisdiction.

**The Plaintiffs' Individual Claims
For Economic Damages Alone Would Exceed $75,000 in All or Most Cases.**

37. As shown in this section, all or virtually all of the individual Plaintiffs' claimed economic damages would exceed $75,000.

38. This Notice of Removal computes specific amounts for Plaintiffs' potential damages on their claims for economic damages solely to demonstrate that the amount-in-controversy requirement for removal is met. SIS believes the computations provided herein are accurate based on the facts established in the accompanying declarations. However, SIS denies that either of the Defendants is liable to any of the Plaintiffs, and both Defendants reserve the right to further refine their positions about Plaintiffs' potential damages as the parties exchange initial disclosures and discovery proceeds.

39. Plaintiffs seek "the full amount of their damages under Washington's Law Against Discrimination," which includes lost wages, future lost earnings, and other employment

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 15

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

benefits.  *See Lords v. N Auto. Corp.*, 75 Wn. App. 589, 604, 881 P.2d 256 (1994)); Plaintiffs'
Second Complaint (Exhibit 1) at 18 (Prayer for Relief, ¶ A).   The facts known to date
demonstrate that all or most of the Plaintiffs' individual claims will exceed the $75,000
amount-in-controversy threshold.

40.     The gravamen of Plaintiffs' employment discrimination Complaint is (1) SIS
obtained a contract from an Amazon corporate entity to provide security guard services formerly
performed by Plaintiffs' previous employer, Andrews; but (2) SIS did not hire most of the
99 current Plaintiffs, who all state they are either East African or African American and who in
numerous cases also state they practice the Muslim religion.  *See* Plaintiffs Second Complaint
(Exhibit 1) ¶¶ 2.1-2.99, 5.1-5.19.

41.     SIS did in fact obtain a contract with Amazon for SIS to provide security guard
services to Amazon in Seattle beginning at 10:00 p.m. PDT on July 28, 2012, and for three years
thereafter (expiring July 31, 2015).   Declaration of Tom P. Seltz Dated September 13, 2013
("Seltz Decl.") ¶ 4.  SIS understands that Amazon's immediately preceding supplier of security
guard services was Andrews.  *Id.* at ¶ 5.  Plaintiffs allege Andrews was their employer before SIS
began providing security guard services to Amazon.  Plaintiffs' Second Complaint ¶¶ 5.1-5.4.

**Potential Wage Loss Damages—Original SIS Staffing**

42.     The contract between SIS and Amazon required SIS to employ personnel for the
various security roles that SIS began covering for Amazon late on July 28, 2012.   These roles
included all of the following job titles.

- Security Specialist (the entry-level security guard role)
- Senior Manager of Operations
- Corporate Investigator (also referred to as Investigator)
- Operations Manager
- Global Security Operations Center ("GSOC") Manager
- GSOC Supervisor
- Badging Officer
- Utility Operations Officer
- Administrative Scheduler
- Administrative Supervisor
- Physical Security Supervisor
- Watch Commander

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 16

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

- Shift Supervisor
- Training Officer

Seltz Decl. ¶ 6.

43. **Plaintiffs Who Applied to Work as Security Specialists.**  Most of the named Plaintiffs allege they applied for Security Specialist positions with SIS.  *See* Plaintiffs' Second Complaint (Exhibit 1) ¶ 5.13 (alleging 92 of the Plaintiffs applied for "security guard" roles); *see also,* Priester Decl. ¶ 4 (SIS has confirmed from its records that at least 71 of the Plaintiffs applied to SIS for full-time Security Specialist positions).  When SIS began providing Amazon with security services, the starting pay for a Security Specialist was $14.50 per hour.  On August 1, 2013, the job's starting hourly pay rate increased to $15.50.  *Id.*  Thus, the potential lost wage damages for each Plaintiff who claims he or she should have been hired by SIS as a full-time Security Specialist (working 2,080 hours per year) amounts to approximately $30,160 for the first year of SIS's Amazon contract (i.e., July 29, 2012 through July 31, 2013) and $32,240 per year for each subsequent year.  This totals $94,640 per Plaintiff over the three-year term of the SIS/Amazon contract.

44. **Plaintiffs Who Applied to Work as an Investigator.**  Plaintiffs Yohanis Beshi (Plaintiffs' Second Complaint (Exhibit 1) ¶ 2.30) and Abdi Sugulle (*id.* ¶ 2.90) each applied to SIS for one full-time Investigator position, which had and has a base salary of $60,000 per year.  Priester Decl. ¶ 10.  Thus, the potential lost wage damages for Plaintiffs Yohanis Beshi and Abdi Sugulle amount to $60,000 per year for each person, or a total individual claim of $180,000 over the three-year term of the SIS/Amazon contract.

45. **Plaintiffs Who Applied to Work as Shift Supervisors.**  Plaintiffs Abdikhadar Abdi (Plaintiffs' Second Complaint (Exhibit 1) ¶ 2.3) and Adoga Ugan (*id.* ¶ 2.93) each applied to SIS for full-time Shift Supervisor positions, which had a starting hourly pay rate of $18.00 when SIS began providing services to Amazon, with the Shift Supervisors who were hired by SIS working at an average rate of $20.00 per hour.  Priester Decl. ¶ 11.  Using $20.00 per hour as their presumptive starting pay rate for Plaintiffs Abdikhadar Abdi and Adoga Ugan, this would

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 17

Jackson Lewis LLP
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1   work out to $41,600 per year. Thus, the potential individual wage loss damages for Plaintiffs

2   Abdikhadar Abdi and Adoga Ugan could amount to $41,600 per year, or a total of $124,800

3   apiece over the three-year term of the SIS/Amazon contract.

4   **Potential Wage Loss Damages—Plaintiffs Who Applied to SIS at Later Times**

5   46.   As discussed in the paragraphs that follow, some of the Plaintiffs applied to SIS

6   for positions working at Amazon after the date on which SIS began providing security services

7   to Amazon. *See* Priester Decl. ¶¶ 6-9, and 12-14. At SIS, when an applicant is hired, it usually

8   takes approximately seven days from the date the application is submitted until the successful

9   applicant begins working for SIS. There are exceptions to this timing, which usually arise if the

10  applicant is currently employed and normally must give two weeks' notice to his or her current

11  employer before starting work. Additional delays could be caused by a positive result on a

12  criminal background check or drug test, which could also cause an employment offer to be

13  rescinded. *Id.* ¶ 5.

14  47.   **A Plaintiff Who Applied to Work as an Administrative Scheduler.** Plaintiff

15  Hawa Arero applied to SIS on August 13, 2012 for a full-time Administrative Scheduler

16  position, which had and has a starting pay of $18.00 per hour. Priester Decl. ¶ 13. If she had

17  been hired for this position, her starting date would have been approximately August 20, 2012.

18  *Id.* Thus, Plaintiff Hawa Arero's claim for potential lost wage damages could amount to $37,440

19  per year, or a total of $100,800 over the remainder of the SIS/Amazon contract.[8]

20  48.   **A Plaintiff Who Applied to Work as Senior Manager of Operations.** Plaintiff

21  Ahmed Wasuge (Plaintiffs' Second Complaint (Exhibit 1) ¶ 2.96) applied to SIS on

22  October 29, 2012 for a full-time position as Senior Manager of Operations, which had and has a

23  base salary of $90,000 per year. Priester Decl. ¶ 6. If he had been hired for this position, his

---

[8]   For Plaintiff Hawa Arero and the other Plaintiffs who applied for other positions after the contract began (*infra* ¶¶ 48-53), the amounts in controversy shown was calculated by prorating the potential economic damages from the hire or starting date identified in the text to the end of the contract term (July 31, 2015). For example, Plaintiffs who worked from the contract's inception would have wages in controversy for 36 months. However, since the earliest Plaintiff Hawa Arero could have worked for SIS as an Administrative Scheduler was August 20, 2012, her wages in controversy would be approximately 35 months. Similar prorating calculations have been made to determine the values of SIS's medical and dental benefits and its paid time off.

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 18

starting date would have been approximately November 5, 2012. *Id.*  Thus, Plaintiff Ahmed Wasuge's claim for potential lost wage damages could amount to $90,000 per year, or a total of $243,750 over the remainder of the SIS/Amazon contract.

49.     **Plaintiffs Who Applied to Work as Global Security Operations Center Manager.**  Plaintiffs Serwan Gardi (Plaintiffs' Second Complaint (Exhibit 1) ¶ 2.41) and Abdifatah Hussein (*id.* ¶ 2.49) applied to SIS on December 19, 2012 and February 3, 2012, respectively, for one full-time Global Security Operations Center Manager position, which had and has a base salary of $75,000 per year. Priester Decl. ¶ 7.  If Plaintiff Serwan Gardi had been hired for this position, his starting date would have been approximately January 2, 2013, due to the year-end holidays. *Id.*  If Plaintiff Abdifatah Hussein had been hired for this position, his starting date would have been approximately February 10, 2013. *Id.*  Thus, Plaintiffs Serwan Gardi's and Abdifatah Hussein's potential lost wage damages for one of them could amount to $75,000 per year, or an average total of $190,625 over the remainder of the SIS/Amazon contract.

50.     **A Plaintiff Who Applied to Work as a Physical Security Supervisor.**  Plaintiff Hassan Allaleh (Plaintiffs' Second Complaint (Exhibit 1) ¶ 2.26) applied to SIS on November 29, 2012, for a full-time Physical Security Supervisor position, which had and has a starting pay of $20.00 per hour. Priester Decl. ¶ 8.  If he had been hired for this position, his starting date would have been approximately December 6, 2012. *Id.*  Thus, Plaintiff Hassan Allaleh's potential lost wage damages for this lower paying position could amount to $41,600 per year, or a total of $100,800 over the remainder of the SIS/Amazon contract.

51.     **Plaintiff Who Applied to Work as Watch Commander.**  Plaintiff Hassan Allaleh also applied to SIS on February 28, 2013, for a full-time Watch Commander position, which had and has a starting pay of $30.00 per hour. Priester Decl. ¶ 9.  If he had been hired for this position, his starting date would have been approximately March 7, 2013. *Id.*  Thus, Plaintiff Hassan Allaleh's potential lost wage damages claim for the Watch Commander position

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1   could amount to $62,400 per year, or a total of $136,800 over the remainder of the SIS/Amazon

2   contract.

3        52.   **Plaintiffs Who Applied to Work as a Security Operations Center Operator.**

4   Plaintiffs Faiza Abdullahi (Plaintiffs' Second Complaint (Exhibit 1) ¶ 2.11) and Yasir Rashid (*id.*

5   ¶ 2.82) applied to SIS on February 12, 2013 and February 3, 2013, respectively, for one full-time

6   Security Operations Center Operation position that paid and still pays $16.50 per hour or

7   $34,320 per year.   Priester Decl. ¶ 14.   If Plaintiff Faiza Abdullahi had been hired for this

8   position, her starting date would have been approximately February 19, 2013.   *Id.*   If Plaintiff

9   Yasir Rashid had instead been hired for this position, his starting date would have been

10   approximately February 10, 2013.   *Id.*   Thus, Plaintiffs Faiza Abdullahi's and Yasir Rashid's

11   potential lost wage damages claim for one of them could amount to $34,320 per year, or a total

12   of $77,880 from March 2013 over the remainder of the SIS/Amazon contract.

13        53.   **An Additional Plaintiff Who Later Applied to Work as a Shift Supervisor.**

14   Plaintiff Yahye Mohamed (Plaintiffs' Second Complaint (Exhibit 1) ¶ 2.76) also applied to SIS

15   on March 4, 2013, for a Shift Supervisor position.   Priester Decl. ¶ 12.   Shift Supervisors have

16   been receiving an average rate of $20.00 per hour for their work on the SIS/Amazon contract.

17   *Id.* ¶ 11.   If Plaintiff Yahye Mohamed had been hired for this position, his hire date would have

18   been approximately March 11, 2013.   *Id.* ¶ 12.   Thus, Plaintiff Yahye Mohamed's potential lost

19   wage damages claim could amount to $41,600 per year, or a total of $91,200 over the remainder

20   of the SIS/Amazon contract.

21                  **Potential Lost Benefits—Medical and Dental Coverage and Vacation**

22        54.   SIS employees working at Amazon locations are eligible for medical and dental

23   benefits after 90 days of employment with SIS.   Thus, November 2012 would have been the first

24   month the employees who were hired as part of SIS's original Amazon workforce would have

25   been eligible for medical and dental benefits.   Priester Decl. ¶ 15.

26        55.   **Medical and Dental Benefits During the 2012 Plan Year.**   For the 2012 plan

27   year (from November 2012 to March 2013), the medical PPO premium was $551.29 per month

28

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 20

for employee-only coverage. For non-management (hourly) positions, as well as for salaried Watch Commander and salaried Supervisor positions, SIS paid 80% of the employee-only medical PPO premium for any employee who selected the medical benefit ($441.03 per month). For all other management (salaried) positions, SIS paid 100% of the employee-only medical PPO premium for any employee who selected the medical benefit ($551.29 per month). Priester Decl. ¶ 15.

56.     **Medical and Dental Benefits During the 2013 Plan Year.** For the 2013 plan year (beginning April 1, 2013), the medical HMO premium was $392.74 per month and the medical PPO premium was $506.03 per month. Both of these premiums are for employee-only coverage. For non-management (hourly) positions, as well as for salaried Watch Commander and salaried Supervisor positions, SIS pays 80% of the employee-only medical HMO premium amount for employees who select either the medical HMO or medical PPO option ($314.19 per month). For all other management (salaried) positions, SIS pays 100% of the employee-only medical HMO premium amount for employees who select either the medical HMO or medical PPO option ($392.74 per month). Priester Decl. ¶ 15. Beginning August 1, 2013, the medical HMO and medical PPO premiums decreased by a few pennies. *Id.*

57.     **Paid Time Off Benefits—General Information.** All hourly SIS employees working in the city of Seattle are also eligible to accrue paid time off ("PTO") at a rate of one hour for every 30 hours worked. All salaried SIS employees are eligible to accrue PTO at a rate of 3.33 hours each pay period. SIS has 24 pay periods per calendar year. Employees begin to accrue PTO immediately upon hire. Accrued and unused PTO may be used for personal absences during employment or may be cashed out (1) upon termination for any reason (including resignations and dismissals), or (2) during employment to the extent the employee's accrued PTO exceeds 40 hours. Priester Decl. ¶ 16.

58.     **Paid Time Off Benefits—Minimum Computations for Plaintiffs who Applied for Hourly Security Specialist Positions.** Thus, each Plaintiff who contends he or she should have been hired in a full-time Security Specialist position would have accrued approximately

69.3 hours of paid time off per year, for a minimum value (at SIS's original entry-level rate of $14.50 per hour) of approximately $1,004.85 per year, or a minimum total of approximately $3,014.55 over the three-year term of the SIS/Amazon contract.

59.     **Paid Time Off Benefits—Minimum Computation for Other Plaintiffs.**   A similar computation would apply to all of the other Plaintiffs, although the rate of PTO accruals and the pay rates used to value them would vary with the specific position at issue.

60.     These PTO accruals would further increase each of these Plaintiffs' individual amounts in controversy.

61.     The table that follows summarizes the total economic damages—for wages, medical and dental benefits and PTO—for the individuals and groups of Plaintiffs discussed above.   The numbers shown in the table below are computed using the variables discussed above.

| Job Title | Plaintiffs | Pay Rate | Approx. Wages to 7/31/15 | Medical & Dental Benefits[9] | | Paid Time Off | Sum, Possible Economic Damages |
|---|---|---|---|---|---|---|---|
| | | | | *Medical* | *Dental* | | |
| **Security Specialist** | At least 71 Plaintiffs applied for this position on a full-time basis | $14.50/hr. (Year 1) $15.50/hr (Years 2 & 3) | $94,640 | $11,002 | $1,644 | $3,016 | **$110,303** |
| **Investigator** | Yohanis Beshi; Abdi Sugulle | $60k/yr. | $180,000 | $13,753 | $1,644 | $6,916 | **$202,314** |
| **Shift Supervisor (July 2012)** | Abdikhadar Abdi; Adoga Ugan | $20/hr. | $124,800 | $11,003 | $1,644 | $4,160 | **$141,607** |
| **Administrative Scheduler** | Hawa Arero | $18/hr. | $100,800 | $13,202 | $1,595 | $3,360 | **$118,956** |
| **Senior Mgr. of Ops.** | Ahmed Wasuge | $90k/yr. | $243,750[10] | $11,548 | $1,445 | $9,366 | **$266,109** |
| **Global Security Ops. Ctr. Mgr.** | Serwan Gardi; Abdifatah Hussein | $75k/yr. | $190,625[11] | $10,604 | $1,345 | $7,324 | **$209,899** |

---

[9]   Eligible after 90 days of employment with SIS.   *See* Priester Decl. ¶ 15.   Medical benefits calculated at 2012 rates from November 2012 through March 2013, and at 2013 rates from April 2013 to July 2015.   Dental benefit calculated from November 2012 to July 2015.

[10]   Assumes hire date of November 5, 2012.   *See* Priester Decl. ¶ 6.

[11]   Assumes hire date of January 2, 2013.   *See* Priester Decl. ¶ 7.

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 22

| Job Title | Plaintiffs | Pay Rate | Approx. Wages to 7/31/15 | Medical & Dental Benefits[9] | | Paid Time Off | Sum, Possible Economic Damages |
| | | | | Medical | Dental | | |
|---|---|---|---|---|---|---|---|
| **Physical Security Sup.** | Hassan Allaleh | $20/hr. | $100,800[12] | $10,997 | $1,345 | $3,360 | **$116,502** |
| **Shift Supervisor (March 2013)** | Yahye Mohamed | $20/hr. | $91,200[13] | $9,819 | $1,246 | $3,040 | **$105,304** |
| **Watch Cmdr.** | Hassan Allaleh | $30/hr. | $136,800[14] | $9,819 | $1,246 | $4,560 | **$152,424** |
| **Security Ops. Ctr. Operator** | Faiza Abdullahi; Yasir Rashid | $16.50/hr. | $77,880[15] | $10,211 | $1,296 | $2,596 | **$91,983** |

**Emotional Distress Damages: Plaintiffs' Claims for Non-economic Damages Would Further Increase the Individual Amounts in Controversy.**

62.    The Washington Law Against Discrimination also allows a plaintiff to claim compensatory damages for emotional distress.    *See Glasgow v. Georgia Pac. Corp.*, 103 Wn.2d 401, 407, 693 P.2d 708 (1985) (recognizing damages for emotional distress under Chapter 49.60 RCW).   Here, each individual Plaintiff's claimed emotional distress damages would further increase his or her amount in controversy.

**"*Blaney* Offset": Plaintiffs' Requests for Tax Penalties Associated with their Economic Damages Claims Would Further Increase the Individual Amounts in Controversy.**

63.    Plaintiffs further claim compensation, in addition to their economic damages, "for the tax penalty associated with any recovery."   Plaintiffs' Second Complaint (Exhibit 1) at 19 (Prayer for Relief, ¶ G).   Washington law allows Plaintiffs to claim a "*Blaney* offset" to make them whole for the adverse tax consequences they would suffer from receiving all of their economic damages in one tax year instead of over a period of several years.   *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers*, 151 Wn.2d 203, 87 P.3d 757 (2004).

64.    For example, for any Plaintiffs who claim SIS should have hired them in one of its Security Specialist positions (originally starting at $14.50 per hour), they would have been earning about $30,160 per year, which carries a federal income tax liability of about $3,656,

---

[12]   Assumes hire date of December 6, 2012.  *See* Priester Decl. ¶ 8.
[13]   Assumes hire date of March 11, 2013.  *See* Priester Decl. ¶ 12.
[14]   Assumes hire date of March 7, 2013.  *See* Priester Decl. ¶ 9.
[15]   Assumes hire date of February 10, 2013.  *See* Priester Decl. ¶ 14.

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

using the 2012 federal income tax tables for married persons filing jointly.[16]   However, Plaintiffs who were not hired by SIS as Security Specialists have not been receiving such an income stream from SIS.  Instead, they potentially will claim they should have earned three years' worth of such income, for a total of $94,640 over SIS/Amazon contract.  *See supra* ¶ 61.  If any of these Plaintiffs were awarded $94,640 in a single tax year for their failure-to-hire claims relating to the Security Specialist position, this award would carry a higher federal income tax liability of about $15,716, using the 2012 federal income tax tables for married persons filing jointly.  This increased federal income tax liability of $12,060 would further increase such a Plaintiff's individual amount in controversy.[17]

65.    The following table makes rough estimates of the *Blaney* offset for each of the positions discussed in paragraphs 22-32, above, using the same calculation methodology as outlined in the preceding paragraph:

| Job Title | Plaintiffs | Pay Rate | One Year | | Three Years | | *Blaney* Offset Estimated |
|---|---|---|---|---|---|---|---|
| | | | Wages | Tax[18] | Wages[19] | Tax[20] | |
| **Security Specialist** | At least 71 Plaintiffs applied for this position | $14.50/hr. (Year 1) | $30,160 (**Year 1**) | $3,656 | $94,640 | $15,716 | **$12,060** |
| **Investigator** | Yohanis Beshi; Abdi Sugulle | $60k/yr. | $60,000 | $8,134 | $180,000 | $38,179 | **$30,045** |
| **Shift Supervisor (July 2012)** | Abdikhadar Abdi; Adoga Ugan | $20/hr. | $41,600 | $5,374 | $124,800 | $23,260 | **$17,886** |
| **Administrative Scheduler** | Hawa Arero | $18/hr. | $37,440 | $4,744 | $100,800 | $17,260 | **$12,516** |
| **Senior Mgr. of Ops.** | Ahmed Wasuge | $90k/yr. | $90,000 | $14,566 | $243,750 | $57,344 | **$42,778** |

[16]   *See* http//:www.irs.gov (search for "tax rate tables").
[17]   Of course, different taxpayers may have greatly differing individual circumstances which could affect their respective tax liabilities.  Thus, in proving their *Blaney* offset claims, Plaintiffs will likely need expert analysis and testimony.
[18]   The federal income tax liability shown is for individuals filing *Married Filing Jointly*.
[19]   *See* Table & Footnotes to ¶ 61 *supra*.
[20]   Amounts over $100,000 are calculated using the 2012 tax computation worksheet.

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 24

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

| Job Title | Plaintiffs | Pay Rate | One Year | | Three Years | | Blaney Offset Estimated |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Wages | Tax[18] | Wages[19] | Tax[20] | |
| Global Security Ops. Ctr. Mgr. | Serwan Gardi; Abdifatah Hussein | $75k/yr. | $75,000 | $10,816 | $190,625 | $41,154 | $30,838 |
| Physical Security Sup. | Hassan Allaleh | $20/hr. | $41,600 | $5,374 | $100,800 | $17,260 | $17.886 |
| Shift Supervisor (March 2013) | Yahye Mohamed | $20/hr. | $41,600 | $5,374 | $91,200 | $14,866 | $9,492 |
| Watch Cmdr. | Hassan Allaleh | $30/hr. | $62,400 | $8,494 | $36,800 | $26,260 | $17,776 |
| Security Ops. Ctr. Operator | Faiza Abdullahi; Yasir Rashid | $16.50/hr. | $34,320 | $4,279 | $77,880 | $11,529 | $7,250 |

## SUMMARY OF AMOUNT IN CONTROVERSY

66.    The following table summarizes that total amount of recovery computed in the preceding sections for economic damages for lost wages and benefits plus the *Blaney* offset.  No amounts of compensatory damages for emotional distress are included, but those too would plainly increase the amount in controversy for any Plaintiff who claims them.  The numbers shown in this table are computed using the variables discussed above.

| Job Title | Plaintiffs | Possible Economic Damages | Emotional Distress | Blaney Offset Estimated | Subtotal |
| --- | --- | --- | --- | --- | --- |
| Security Specialist | 71 Plaintiffs applied for this position | $106,143 | | $12,060 | $118,203 |
| Investigator | Yohanis Beshi; Abdi Sugulle | $202,314 | | $30,045 | $232,359 |
| Shift Supervisor (July 2012) | Abdikhadar Abdi; Adoga Ugan | $141,607 | | $17,886 | $159,493 |
| Administrative Scheduler | Hawa Arero | $118,956 | | $12,516 | $131,172 |
| Senior Mgr. of Ops. | Ahmed Wasuge | $266,109 | | $42,778 | $308,887 |
| Global Security Ops. Ctr. Mgr. | Serwan Gardi; Abdifatah Hussein | $209,899 | | $30,838 | $240,237 |
| Physical Security Sup. | Hassan Allaleh | $116,502 | | $17.886 | $128,388 |

Jackson Lewis LLP
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

| Job Title | Plaintiffs | Possible Economic Damages | Emotional Distress | *Blaney* Offset Estimated | Subtotal |
|---|---|---|---|---|---|
| **Shift Supervisor (March 2013)** | Yahye Mohamed | $105,304 | | $9,492 | **$114,796** |
| **Watch Cmdr.** | Hassan Allaleh | $152,424 | | $17,776 | **$170,200** |
| **Security Ops. Ctr. Operator** | Faiza Abdullahi; Yasir Rashid | $91,983 | | $7,250 | **$99,233** |

## DECLARATORY RELIEF AND "REINSTATEMENT"

### Plaintiffs' Requests for These Equitable Remedies Would Further Increase the Individual Amounts in Controversy.

67.     Plaintiffs also seek unspecified declaratory relief and "[r]einstatement." Plaintiffs' Second Complaint (Exhibit 1) at 19 (Prayer for Relief, ¶¶ E-F).  The values of these equitable remedies will further increase the individual amounts in controversy.

68.     SIS would incur substantial costs if it were required to hire or reinstate any of the Plaintiffs as a result of this litigation.  For example, SIS would be required to fire existing employees already working for SIS on the Amazon contract, paying them for all their accrued and unused PTO.  SIS would also incur costs associated with the increased unemployment compensation premiums and COBRA benefits to the extent any terminated employees sought these post-termination benefits.  After hiring one or more of the Plaintiffs, SIS would then incur the administrative costs and expenses of training the newly-hired former Andrews employees about the policies and procedures applicable to SIS employees at the Amazon location, which differ substantially from those in place while Plaintiffs worked for Andrews.  In addition, salaried SIS employees and some hourly SIS employees undergo at least two additional days of training at SIS's corporate headquarters in Culver City, California, so there would also be travel expenses associated with hiring employees in these particular roles.  Priester Decl. ¶ 18.

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 26

Jackson Lewis LLP
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

**PLAINTIFFS' CLAIMS FOR ATTORNEYS' FEES AND COSTS:**

**Plaintiffs' Separate Requests to Recover their Attorney's Fees and Costs
Would Further Increase the Individual Amounts in Controversy.**

69.      None of the preceding analyses includes the value of the individual Plaintiffs' claims for their share of Plaintiffs' attorney's fees and costs.  *See* Plaintiffs' Second Complaint (Exhibit 1) ¶ 3.4.   However, attorney's fees also are included in computing the amount in controversy "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language."   *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

70.      Plaintiffs seek attorney's fees under RCW 49.60.030(2), which does authorize an award of reasonable attorney's fees.   Therefore, each Plaintiff's individual share of the attorney's fees and costs would increase that Plaintiff's individual amount in controversy. *See Guglielmino*, 506 F.3d at 698 (in considering the amount in controversy for two individual plaintiffs, the district court estimated attorney's fees at a "conservative" amount equal to 12.5% of those plaintiffs' claimed economic damages before the district court concluded that both plaintiffs' individual claims exceeded the amount in controversy).

71.      If this Court uses the same approach as in *Guglielmino*, then, based solely on Plaintiffs' separate claim for attorney's fees in addition to their potential damages, the amount in controversy would be exceeded for any Plaintiff whose individual damages claim exceeds $65,625 (because 12.5% of $75,000 is $9,375).

**SUPPLEMENTAL JURISDICTION**

72.      As discussed above, Defendant Calabrese is a sham defendant as to all Plaintiffs who contend they should have been hired by SIS for its initial Amazon workforce, as well as for virtually all of the Plaintiffs who applied to SIS in the later months.   Calabrese was not a supervisor or manager under the WLAD with regard to nearly all of the named Plaintiffs because he was not employed by SIS until July 28, 2012, and he did not provide SIS with any input on any hiring decisions until November 8, 2012, months after SIS hired its initial workforce for its

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 27

1  Amazon contract.  Further, at least seven of the named Plaintiffs did not even apply for

2  employment with SIS and three additional Plaintiffs were hired by SIS.  In short, all or virtually

3  all of the Plaintiffs lack viable claims against Defendant Calabrese under the WLAD.

4      73.    If there are any named Plaintiffs who arguably may have a claim against

5  Defendant Calabrese, the Court may exercise supplemental jurisdiction over their claims under

6  28 U.S.C. § 1367.  *See Exxon Mobil Corp. v. Allapattah Svcs., Inc.*, 545 U.S. 546, 549 (2005);

7  *cf. Monroe v. Gagan*, 2008 U.S. Dist. LEXIS 83854, *8-9, *36-37 (D. Ariz. Sept. 29, 2008).

8                              **CONCLUSION**

9      74.    This  Court  has  original  jurisdiction  over  this  civil  action  under

10  28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000

11  and is between citizens of different states.  More specifically, based on the analyses above, the

12  claims of all or virtually all of the Plaintiffs here exceed the $75,000 threshold for diversity

13  jurisdiction, which satisfies the amount in controversy requirement.  Further, it is clear that

14  Calabrese is a "sham" defendant who has been added to this action merely to prevent diversity

15  jurisdiction as all or virtually all of the Plaintiffs lack viable claims against him.  As such, the

16  Court should ignore Calabrese's citizenship for the purposes of determining jurisdiction.  Thus,

17  diversity jurisdiction exists, contrary to Plaintiffs' second effort to plead otherwise.

18      75.    This Court is the appropriate venue for removal because it is the federal district

19  court for the district and division where the above-described King County Superior Court case is

20  pending.  *See* 28 U.S.C. § 1441(a).

21      76.    As required by 28 U.S.C. § 1446(d), a copy of the Notice of Removal is being

22  filed with the King County Superior Court, attached to a pleading entitled Notice to State Court

23  of Removal to Federal Court.

24      77.    As required by 28 U.S.C. § 1446(d), and as affirmed in the attached Declaration

25  of Service, SIS is serving Plaintiffs with this Notice of Removal and with its Notice to State

26  Court of Removal to Federal Court.

27

28

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 28

**Jackson Lewis LLP**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1   DATED this 16th day of September, 2013.

2                                   JACKSON LEWIS LLP

3                                    s/ Karen P. Kruse
                                    Karen P. Kruse, WSBA #19857
4                                   520 Pike Street, Suite 2300
                                    Seattle, WA 98101
5                                   Tel: 206-405-0404
                                    Fax: 206-405-4450
6                                   karen.kruse@jacksonlewis.com

7

8   DATED this 16th day of September, 2013.

9                                   JACKSON LEWIS LLP

10                                   s/ Sieu K. Che
                                    Sieu K. Che, WSBA #40422
11                                  520 Pike Street, Suite 2300
                                    Seattle, WA 98101
12                                  Tel: 206-405-0404
                                    Fax: 206-405-4450
13                                  sieu.che@jacksonlewis.com

14                                  Attorneys for Defendant Security Industry
                                    Specialists, Inc. and Defendant James Calabrese
15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 29

1

### DECLARATION OF SERVICE

2     The undersigned declares under penalty of perjury under the laws of the State of

3   Washington that on this day, I electronically filed a true and accurate copy of the document to

4   which this declaration is affixed with the Clerk of the Court using the CM/ECF System, which

5   will send notification of such filing to the following:

6

7              Stephen P. Connor
              Anne Marie E. Sargent

8             Connor & Sargent PLLC
          1000 Second Avenue, Suite 3500

9              Seattle, WA 98104

10           Fax: 206-292-0494
           steve@cslawfirm.net

11           aes@cslawfirm.net

12              J.D. Stahl
           Mundt MacGregor LLP

13         271 Wyatt Way NE Ste 106
       Bainbridge Island, WA 98110-2873

14          Tel: 206-624-5950

15          Fax: 206-624-5469
        jdstahl@mundtmac.com

16

17   Dated this 16th day of September, 2013, at Seattle, Washington.

18

19

20                     Andrea W. Preston

4814-1834-2421, v. 4

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL
(Diversity Jurisdiction) - 30